UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL CARTER,

       Plaintiff,                  CIVIL ACTION NO. 08-CV-11862-DT

vs.

                                   DISTRICT JUDGE PATRICK J. DUGGAN

WEIDMAN, et al.,               MAGISTRATE JUDGE MONA K. MAJZOUB

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION:** The Motion for Summary Judgment filed by Defendants Blain, Charbonneau, Bellows, Kocot, Colamarino, Meyhofer, Winn, and Svensen on June 23, 2009 (docket no. 69) should be **GRANTED** and these Defendants should be dismissed. The Motion for Partial Summary Judgment filed by Plaintiff on August 7, 2009 (docket no. 74) should be **DENIED**.

**II.    REPORT:**

       This is a *pro se* civil rights action filed by a Michigan state prisoner pursuant to 42 U.S.C. § 1983 and state law. (Docket no. 1). Plaintiff alleges that the Defendants violated federal and state law by forcibly confining him on top-of-bed restraints ("TOB") for thirty hours at Standish Maximum Facility ("SMF") on September 4, 2006, knowing that he had multiple sclerosis ("MS"). (Docket no. 1).

       This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Blain, Charbonneau, Bellows, Kocot, Colamarino, Meyhofer, Winn, and Svensen. (Docket no. 69). Plaintiff filed a Response and Motion for Partial Summary Judgment on August

7, 2009.  (Docket no. 74).  Defendants filed a Reply on August 11, 2009.  (Docket no. 75).  All pretrial matters have been referred to the undersigned for decision.  (Docket no. 20).  The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e).  These matters are now ready for ruling under 28 U.S.C. § 636(b)(1)(B).

**A.  Facts and Procedural History**

The instant case arises out of a disturbance that occurred on September 4, 2006 at SMF in the prison unit where Plaintiff was housed.  During the disturbance prisoners flooded cells, shouted, threatened staff, and kicked cell doors.  (Docket no. 35, ex. A; Docket no. 39).  Prisoners also covered cell door windows and refused to remove the covering when directed by staff.  (Docket no. 35, ex. A; Docket no. 39).  Staff members were concerned that the situation was deteriorating and the disorder had to be contained before additional inmates joined in the "incite to riot" atmosphere.  (Docket no. 35, ex. A).  The shift supervisor, Defendant Meyhofer, contacted the Warden to apprise him of the situation and seek authorization to use TOB restraints and chemical agents if needed.  The Warden authorized TOB soft restraints and the use of chemical agents.  (Docket no. 35, ex. A).  The Warden also deployed the emergency response team ("ERT") to control disruptive prisoners.  (Docket no. 35, ex. A).

Plaintiff states in his affidavit that after the ERT was activated he covered his cell window with a towel.  (Docket no. 39 at 2).  When staff inquired into his well-being, Plaintiff refused to respond.  (Docket no. 1 at 3).  When a female sergeant approached Plaintiff's cell and ordered Plaintiff to remove the window covering, Plaintiff complied and exposed himself to her.  (Docket no. 39 at 2).  Plaintiff received a misconduct report for disobeying a direct order for not removing the towel from his window.  (Docket no. 1 at 3).

Plaintiff disputes that he shouted and banged on his cell door (docket no. 74), however he states in his Complaint that when the ERT entered a nearby cell to restrain a prisoner Plaintiff yelled to the ERT "Stop hurting that guy! What the hell wrong with yall (sic), get off him!" (Docket no. 1 at 3). After the ERT restrained the nearby prisoner, they lined up outside of Plaintiff's cell door. (Docket no. 1 at 3). Plaintiff complied with the directions of the ERT to present himself to be restrained and lay face flat on the floor. (Docket no. 35, ex. A). Nevertheless, Plaintiff claims he was physically assaulted when the ERT entered his cell and placed him on TOB restraints. (Docket no. 39 at 3).

Plaintiff alleges that during the incident he was strip searched in front of male and female officers (docket no. 1 at 4; docket no. 39 at 2), restrained so tightly that he could barely breathe (docket no. 1 at 4), and his arm, wrist and fingers were bent and twisted cutting the nerve ending in his hand and fingers and causing his fingers to swell. (Docket no. 1 at 3; Docket no. 39 at 2). Plaintiff further contends that he urinated on himself while on TOB restraints because his MS prevents him from holding his bladder, and he was left in a soiled condition for over twenty hours resulting in rashes to his thighs and buttocks. (Docket no. 74). Plaintiff contends that the staff was aware that he had MS and was at high risk for TOB restraints, yet they ignored the risk such restraint presented to his medical condition. (Docket no. 1). Plaintiff further contends that the Defendants ignored his complaints that his hips and side burned intensely, his vision was blurry, and his feet were numb from lack of circulation. (Docket no. 1; Docket no. 74).

On April 28, 2008 Plaintiff filed a complaint against multiple Defendants who were involved in the incident. In his Complaint, Plaintiff alleges that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and excessive force, denied him a

protected liberty interest in violation of his Fourteenth Amendment due process rights, conducted an unlawful strip search in violation of the Fourth Amendment, committed an assault and battery in violation of state law, and engaged in a conspiracy to deny him his constitutional rights. (Docket no. 1).

Nine Defendants named in Plaintiff's lawsuit filed a Motion for Summary Judgment on December 17, 2008. (Docket no. 35). In response, Plaintiff filed a Motion for Partial Summary Judgment. (Docket no. 38). The Court granted the Defendants' Motion for Summary Judgment and dismissed them from the action. (Docket no. 42, 50). Plaintiff's Motion for Partial Summary Judgment was denied. (Docket no. 50). A tenth Defendant was dismissed from the lawsuit by separate Order entered on June 22, 2009. (Docket nos. 65, 66).

The instant Motion was filed by the remaining Defendants on June 23, 2009. (Docket no. 69). Defendants Blain, Charbonneau, Bellows, and Kocot are correctional officers employed at SMF and were members of the ERT involved in Plaintiff's extraction and placement on TOB restraints. (Docket no. 35, ex. A). Defendant Colamarino is also a correctional officer at SMF and he operated the video recorder during the Plaintiff's extraction and placement on TOB restraints. (Docket no. 35, ex. A). Defendant Meyhofer is a Lieutenant at SMF, and as shift supervisor she sought permission from the Warden to use TOB restraints and chemical agents. (Docket no. 35, ex. A). Defendants Winn and Svensen are registered nurses at SMF. (Docket no. 35, ex. A). Plaintiff seeks damages and sues the Defendants in their individual capacities only. (Docket no. 1).

### B.  Governing Law

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.     Analysis**

**1.     Eighth Amendment Deliberate Indifference to Serious Medical Need.**

In his Complaint, Plaintiff alleges that all of the Defendants acted with deliberate indifference to his serious medical need in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Docket no. 1 at 6). In his Response to the instant Motion for Summary Judgment, Plaintiff only argues that Defendants Meyhofer, Winn, and Svensen are liable for their deliberate indifference to his serious medical need. (Docket no. 74 at 3-4). Plaintiff alleges that Defendant Winn told Defendant Meyhofer that Plaintiff's MS would not interfere with TOB restraints. (Docket no. 74 at 3). Plaintiff further asserts that Defendants Meyhofer, Winn, and Svenson knew he was experiencing moderate burning pain in his hips and side, and numbness in his feet, yet he was provided with no medical treatment. (Docket no. 74 at 4).

To establish a cognizable claim for a violation of the Eighth Amendment under a theory of deliberate indifference to a serious medical need, an inmate must show that he suffered from a serious medical need and the official acted with a sufficiently culpable state of mind. *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994). An official acts with deliberate indifference when he consciously disregards an excessive or substantial risk to inmate health or safety. *Id*. at 837. " 'When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.' " *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

The Court will accept Plaintiff's assertion that his diagnosis of multiple sclerosis presents a serious medical need. However, Plaintiff must still establish that the Defendants acted with the requisite state of mind. Plaintiff alleges that Defendant Meyhofer was deliberately indifferent to his serious medical need by disregarding his medical condition and subjecting him to TOB restraints with knowledge of his deteriorating condition. The record shows that Defendant Meyhofer received authorization from the Warden to use TOB restraints and chemical agents as needed. Plaintiff states that Defendant Meyhofer was informed by medical personnel that Plaintiff was not at risk for TOB restraints. The record does not support Plaintiff's contention that Defendant Meyhofer knew of and disregarded an excessive risk of harm to the Plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. at 837.

With regard to Defendants Winn and Svensen, video evidence on file with the Court shows that Plaintiff complained of experiencing burning on the left side of his body and numbness. (Docket no. 35, ex. B). Except for his complaints, there was no obvious sign that Plaintiff was in medical distress. The video shows that Defendant Winn examined the Plaintiff immediately after he was placed on TOB restraints. (Docket no. 35, ex. B). During this examination, Defendant Winn removed Plaintiff's socks to inspect his feet and asked for additional lighting so that he could better

see the condition of Plaintiff's feet and legs. (Docket no. 35, ex. B). Defendant Winn then inspected Plaintiff's hands and checked Plaintiff's restraints. The Critical Incident Report filed by Defendant Winn on the night Plaintiff was placed on TOB restraints states that a restraint check was performed and no impairment in Plaintiff's circulation was noted. (Docket no. 35, ex. A). The record further shows that Defendant Winn and Defendant Svensen checked Plaintiff's restraints regularly throughout the course of Plaintiff's confinement. (Docket no. 35, ex. A).

The actions of Defendants Winn and Svensen do not satisfy the culpability requirement of the deliberate indifference standard. The record does not support Plaintiff's allegation that these Defendants disregarded an excessive or substantial risk to inmate health or safety. Furthermore the record fails to show that this is a case where the medical attention rendered was so woefully inadequate as to amount to no treatment at all. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Plaintiff received medical attention throughout his restraint. The fact that he believes he was entitled to more or different medical treatment does not constitutionalize his claim. Defendants Winn and Svensen are not liable for being deliberately indifferent to Plaintiff's serious medical need.

With regard to Defendants Kocot, Bellows, Blain, Charbonneau, and Colamarino, the record shows that members of the ERT are not made aware of inmates' medical conditions. (Docket no. 35, ex. A). Instead, the ERT is informed only of risk factors that would prevent an inmate from being placed on TOB restraints. (Docket no. 35, ex. A). The record further shows that there was no risk factor at the time of this incident that would prevent the Plaintiff from being placed on TOB

restraints. (Docket no. 35, ex. A). A Critical Incident Report filed by the Lieutenant who led the ERT on the night Plaintiff was placed on TOB restraints shows that the ERT acted with the belief that Plaintiff was at normal risk for TOB restraints. (Docket no. 35, ex. A). Plaintiff has failed to establish that the Defendants had knowledge of Plaintiff's medical condition or that they were aware that TOB restraints could exacerbate his condition.

Even if the Court accepted the premise that Defendants Kocot, Bellows, Blain, Charbonneau, and Colamarino had knowledge of Plaintiff's serious medical condition and the risk TOB restraints created, the Defendants did not disregard that risk. Video evidence shows that the ERT acknowledged Plaintiff's complaints of burning and numbness by informing the Plaintiff that he would be checked by medical staff shortly. After the ERT was finished applying the restraints, they immediately informed the nurse that it was time for the medical evaluation. The restraint process itself was handled professionally and with much consideration given to the Plaintiff under the circumstances. Defendants Kocot, Bellows, Blain, Charbonneau, and Colamarino did not disregard a significant risk to Plaintiff's health or safety by placing Plaintiff on TOB restraints.

**2. Eighth Amendment Cruel and Unusual Punishment and Excessive Force**

Plaintiff alleges that the Defendants subjected the Plaintiff to the unnecessary and wanton infliction of pain by confining the Plaintiff on TOB restraints for over thirty hours with the intent of causing him harm. (Docket no. 74 at 5). Plaintiff states that the Defendants chained him to the bed for over thirty hours for no justifiable reason. (Docket no. 1 at 6; Docket no. 74). Plaintiff further states that the ERT used excessive force during his cell extraction and placement on TOB restraints. (Docket no. 1).

The Eighth Amendment proscribes conditions of confinement which involve the unnecessary

and wanton infliction of pain or which are grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Among this category are punishments that are totally without penological justification. *Id*. To prevail on this claim, the inmate must show objectively that "a single identifiable necessity of civilized human existence is being denied." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). For purposes of this component the deprivation must be extreme. *Id*. Only deprivations denying an inmate "the minimal civilized measure of life's necessities" are grave enough to create a violation of the Eighth Amendment for cruel and unusual punishment. *Id*. Subjectively, the plaintiff must show that the prison official acted with a sufficiently culpable state of mind. *Id*. "Controlling an emergency situation and maintaining order are legitimate penological justifications." *U.S. v. Budd*, 496 F.3d 517, 531 (6th Cir. 2007) (citations omitted). However, when safety concerns have abated or an emergency has been dispelled, the justification may disappear. *Id*.

Plaintiff admits he engaged in disorderly conduct during a time of prison unrest. Prison staff described the condition of the prison on the day of the incident as decomposing, threatening, and an "incite to riot" atmosphere. (Docket no. 35, ex. A). After he was placed on TOB restraints the Plaintiff received a major misconduct report for threatening to shoot Defendant Meyhofer. (Docket no. 35, ex. A). The Plaintiff continued to threaten staff well into his confinement on TOB restraints. (Docket no. 35, ex. A, Control Center Logbook). The Plaintiff was confined with soft restraints, and while restrained was provided regular bathroom breaks, water breaks, and medical attention. In regard to Plaintiff's excessive force allegation, video footage of the Plaintiff's extraction and placement on TOB restraints shows that the ERT did not use excessive force during the process. In light of these factors, Defendants did not violate Plaintiff's Eighth Amendment right to be free

from cruel and unusual punishment.

### 3. Due Process, Illegal Search and Seizure, State Law Claims, and Conspiracy

Plaintiff's Complaint asserts claims of due process violations, illegal search and seizure, violations of state law claims, and conspiracy. In relation to these claims Plaintiff asserts that 1) he has a protected liberty interest in not being confined to TOB restraints; 2) he was unlawfully strip searched in front of male and female officers and other inmates; 3) the Defendants are liable for assault and battery pursuant to state law; and 4) the Defendants unlawfully conspired to deprive him of constitutional rights in violation of 42 U.S.C. § 1983. (Docket no. 1).

The Court considered these same allegations in a previous motion filed in this case and concluded that Plaintiff's claims of due process violations, illegal search and seizure, violations of state law claims, and conspiracy should be dismissed. (Docket nos. 42, 50). The Court dismissed the claims on the grounds that the Due Process Clause affords Plaintiff no greater protection than does the Cruel and Unusual Punishments Clause; the brief strip search Plaintiff underwent was not unconstitutional; the Plaintiff failed to bring forth sufficient evidence to support the conspiracy claim; and the state law claims are subject to dismissal along with the federal claims. The same reasoning applies with equal force to the instant motion. Therefore, these claims should be dismissed as to the Defendants in the instant motion.

### 4. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on the grounds that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by forcing him to lie in his own urine for twenty hours while on TOB restraints. Plaintiff alleges that he urinated on himself three times while on TOB restraints. The record shows that Plaintiff urinated on the floor twice and

urinated on himself once, approximately fifteen hours after he was restrained. (Docket no. 35, ex. A, Control Center Logbook). Plaintiff refused bathroom breaks on at least seven occasions. (Docket no. 35, ex. A, Control Center Logbook). A minimum of four bathroom breaks were offered to Plaintiff after his soiling incident, at which time Plaintiff could have cleaned himself if necessary. (Docket no. 35, ex. A, Control Center Logbook). After he urinated on himself Plaintiff accepted only one of the four offered bathroom breaks and refused the other three. (Docket no. 35, ex. A, Control Center Logbook).

The Court previously considered and denied the identical claim raised by the Plaintiff in a prior motion filed in this case. (Docket no. 42, 50). The Plaintiff's instant Motion for Partial Summary Judgment should be denied.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must

recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 16, 2009            s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Joel Carter and Counsel of Record on this date.

Dated: November 16, 2009            s/ Lisa C. Bartlett
                                    Case Manager